IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ERIC B. J.,

           Plaintiff,

                                   Civil Action No.
                                   6:17-CV-0511 (LEK/DEP)

     v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF:

ERIC B. J., *Pro Se*
730 Elizabeth Street
Utica, NY 13501

FOR DEFENDANT:

HON. GRANT C. JAQUITH         PRASHANT TAMASKAR, ESQ.
United States Attorney for the    Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

    This is an action brought by *pro se* plaintiff Eric B. J. seeking judicial

review of a finding by the Acting Commissioner of Social Security

("Commissioner") that he was not disabled at the relevant times and

therefore ineligible for the Social Security benefits for which he applied. In

support of his challenge to the Commissioner's determination, plaintiff

argues that the administrative law judge ("ALJ") who heard and decided

the matter overlooked evidence concerning his limitations that preclude his

ability to perform to work functions, and improperly discounted several of

his diagnosed medical conditions. For the reasons set forth below, I

recommend a finding that the Commissioner's determination resulted from

the application of proper legal principles, and is supported by substantial

evidence.

I.      BACKGROUND

Plaintiff was born in November 1973, and is currently forty-five years

old. Administrative Transcript at 200, 561, 568, 571.[1] Plaintiff was thirty-

nine years at the time of his alleged disability onset and forty-two years of

age at the time of the ALJ's decision. AT 18, 88. He stands five feet,

eleven inches in height, and weighs in excess of 320 pounds. AT 31, 356.

---

[1]      The administrative transcript, which consists of a compilation of medical records and other evidence that was before the agency at the time of its determination in this matter, Dkt. No. 9, will be hereinafter cited as "AT ___."

Plaintiff is single, and lives with his elderly grandparents in Utica, New York. AT 32, 51-52, 561. Plaintiff has four children, although they do not live with him. AT 31, 288. Plaintiff reports being right-hand dominant. AT 31. Plaintiff possess a driver's license, but does not own a vehicle. AT 32.

Plaintiff left school after completing the ninth grade. AT 32. The record is equivocal as to whether he later obtained a GED. *Compare* AT 33 (hearing testimony during which plaintiff stated he did not achieve a GED) *with* AT 563 (plaintiff reports to LCSW Dean Anthony, with United Cerebral Palsy, that he did receive a GED). Plaintiff is able to read, write, and perform simple mathematics. AT 33.

Plaintiff is currently unemployed, and has not worked since 2010. AT 221. Prior to then, plaintiff worked as a general laborer, a lawn technician, and an attendant at a children's institution. AT 33-37, 65, 205, 210.

On November 1, 2010, plaintiff was injured in an automobile accident when the vehicle that he was driving was struck from the rear by another automobile. AT 38, 285. As a result of the accident, he was seen at the emergency room of Katherine Shaw Bethea Hospital in Dixon, Illinois. AT 258-83. A CT scan of plaintiff's cervical spine performed on the day after the accident revealed the following results:

> There is reversal of the normal lordosis likely due
> to spasm. There is significant degenerative arthritic

> disease centered at C5-C6 with gross spurring
> seen antenorly. There is however no evidence of
> any fracture or dislocation. No acute abnormality
> as seen.

AT 269. X-rays taken of plaintiff's lumbar spine on that same date yielded

no evidence of an acute fracture or dislocation, and no significant

underlying arthritic disease or productive or destructive lesion, with no

significant abnormality otherwise noted. AT 268. Upon his discharge from

the hospital, plaintiff was prescribed Flexeril and Ultram, and was also

advised to take Ibuprofen for pain. AT 259, 275.

In December 2010, plaintiff was seen by Advanced Practice Nurse

("APN") Teresa Blair, complaining of ongoing neck and back pain radiating

into his extremities. AT 285-88. APN Blair noted that the x-ray results of

plaintiff's left shoulder showed spur formation at the C5-C6 spinal

segment, while x-rays of plaintiff's lumbar sacral spine and left shoulder

were negative. AT 286, 298-300.

Plaintiff underwent physical therapy for his injuries, beginning on or

about January 19, 2011. AT 313-40. He was discharged from physical

therapy on April 18, 2011, however, out of concern for his safety based

upon a high blood pressure condition. AT 313-15.

The next record evidence regarding medical attention to plaintiff's

neck and back is from January 19, 2012, when he received treatment from

St. Elizabeth Medical Center Family Practice Group for complaints of lower leg pain and lower back pain. AT 350-51. After an examination, which reflected some objective findings supporting plaintiff's pain complaints, Dr. Pratap Thakor ("Dr. Thankor") prescribed Lortab and Flexeril for plaintiff's back pain and referred him to pain management and physical therapy, as well as ordering an MRI of his lower back. *Id.* The MRI was subsequently performed on January 24, 2012, revealing a minimal, barely discernable disc bulging at L1-L2 and L5-S1. AT 354. X-rays of plaintiff's lumbosacral spine, taken on February 12, 2012, similarly revealed only mild degenerative changes. AT 352.

Plaintiff returned to see Dr. Thakor on May 1, 2012, indicating that he needed to wear a back brace for his lower back and neck pain and that he did not benefit significantly from his physical therapy. AT 346. Plaintiff followed that shortly with a visit, on June 4, 2012, to the Faxton-St. Luke's emergency room with complaints of lower back pain. AT 586-87. An examination during that visit revealed a decreased range of motion in plaintiff's lower back. AT 587. X-rays of plaintiff's thoracic and lumbar spine, however, showed no significant abnormalities. AT 588-89.

Plaintiff again visited Dr. Thakor on June 19, 2012. AT 343-45. In a progress note associated with that visit, Dr. Thakor reports that plaintiff

presented with restricted flexion of the neck, but no other muscular skeletal or neurological abnormalities. *Id.* On that occasion Dr. Thakor diagnosed plaintiff as suffering from neck pain, secondary to cervical spine degeneration and lower back pain secondary to disc herniation. *Id.*

It does not appear that plaintiff again sought medical treatment for his neck and back conditions until nearly two years laterm when he was seen on April 17, 2014 by Dr. Asim Siddiqi ("Dr. Siddiqi"), who also practices with the St. Elizabeth Medical Group.[2] AT 423-26. X-rays of plaintiff's lumbar spine taken on the date of that visit reflected no acute fracture or significant degenerative disc disease. AT 445-46. X-rays of plaintiff's cervical spine, also taken on that date, revealed no acute fracture, and only mild degenerative disc disease, the most significant of which was present at the C5-C6 spinal segment. *Id.* AT 447-48.

Plaintiff continued to treat with practitioners at the St. Elizabeth Medical Center, and later the Slocum Dickson Medical Group, including with Dr. Ivon Antonovich, for his back and neck issues as well as other conditions. AT 369-422, 449-560. An MRI of plaintiff's lumbar spine, administered on May 14, 2015, revealed mild disc desiccation at L4-L5,

---

[2]    At the hearing, plaintiff attributed the two-year hiatus in his medical treatment to the fact that he did not have medical insurance. *See* AT 39-40.

minimal posterior disc bulging at L1-L2 and L5-S1, and no significant central canal stenosis. AT 441. It also showed mild areas of facet and ligamentous hypertrophy at L1-L2 and L5-S1, and mild bilateral foraminal narrowing at L5-S1, but without definite neural impingement. AT 441.

In addition to his back and neck injuries, plaintiff has suffered from several other physical and mental conditions. Plaintiff was diagnosed with obstructive sleep apnea syndrome by Dr. Siddiqi on May 29, 2014. AT 421. A sleep study, conducted on July 31, 2014, revealed that use of a continuous positive airway pressure ("CPAP") device successfully eliminated the condition.[3] AT 437-38.

Plaintiff has also suffered from anxiety and depression. On January 16, 2015, licensed clinical social worker ("LCSW") Dean Anthony, of Upstate Cerebral Palsy, located in Utica, New York, completed a comprehensive assessment of plaintiff's mental condition. AT 361-68, repeated at 561-68. In that assessment, it was noted that plaintiff had no prior psychiatric admissions, nor was he prescribed any psychiatric medications although psychotherapy and medications, as needed, were recommended. AT 362-63, repeated at 562-63. Plaintiff was diagnosed as

---

[3]    During an appointment with Physician's Assistant ("PA") Matthew Labella on October 2, 2014, plaintiff reported he could not utilize the CPAP device regularly because of his sinus congestion. AT 401-02.

suffering from generalized anxiety and major depressive orders.[4] *Id.*

Plaintiff reports that his grandparents do most of the household chores, including cooking, cleaning, and laundry at his residence. AT 52-54; *see also* AT 213-15, 356. Plaintiff is able to shower and dress daily. AT 356. According to plaintiff, he is independent in connection with activities of daily living, and exercises up to three times per week. AT 370, 507, 557. Plaintiff states that he does not like being in crowds, and would prefer to be left alone. AT 52. He does, however, talk to friends daily. AT 52, 217. Plaintiff tries to attend church regularly on Sundays, and to go shopping by himself, but makes an effort to avoid crowds. AT 54-55, 62, 217. Plaintiff smokes, although he reports that it is less than one pack of cigarettes per day. AT 288, 355.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff protectively filed a Title II application for disability insurance benefits ("DIB"), and a Title XVI application for supplemental security income ("SSI") payments, on March 4, 2014, in both alleging a disability

---

[4]    In addition to these impairments, plaintiff also suffers from hypertension and obesity.

onset date of November 1, 2010.[5] AT 171-80. In support of his

application, plaintiff claimed an inability to work as a result of lost strength

in the left side of his body, arthritis in the neck, sleep apnea, high blood

pressure, and obesity. AT 204. A hearing was conducted ALJ F. Patrick

Flannigan on October 1, 2015 to address plaintiff's applications for

benefits. AT 23-76. Following the hearing, at which plaintiff was

represented by counsel, ALJ Flannigan issued a decision on November

23, 2005, finding that plaintiff was not disabled at the relevant times and

therefore not entitled to the Social Security benefits sought. AT 6-22. That

decision became a final determination of the agency on April 12, 2017,

when the Social Security Administration Appeals Council denied plaintiff's

application for review of the opinion. AT 1-4.

In his decision, ALJ Flannigan applied the familiar, five-step test for

determining disability.[6] After determining that plaintiff was insured through

December 31, 2014, ALJ Flannagan found that plaintiff has not engaged in

substantial gainful activity since November 29, 2012. AT 11. At step two,

he concluded that plaintiff suffers from several severe impairments that

---

[5]    As will be seen, the claimed onset date of plaintiff's disability was amended at
the hearing to November 29, 2012, one day after an apparent prior unfavorable ALJ
decision. *See* AT 30.

[6]    That five step sequential analysis will be more fully described further on in this
report. *See* pp. 16-18, *post*.

limit his ability to perform basic work functions, including degenerative disc disease of the cervical and lumbar spine, obesity, depression, and anxiety order. *Id.* In arriving at that conclusion, ALJ Flannigan rejected other alleged impairments, including obstructive sleep apnea and hypertension as well as an additional, medically-determinable impairment related to reported weakness of the left side of his body, based upon plaintiff's failure to demonstrate that those conditions cause significant functional limitations. AT 12. At step three, ALJ Flannigan concluded that plaintiff's conditions did not meet or medically equal any of the listed, presumptively disabling impairments set forth in the Commissioner's regulations, 20 C.F.R. Pt. 404, Subpt. P., App. 1. AT 12. In making that determination ALJ Flannigan specifically considered Listings 1.04, 12.04 and 12.06. AT 12-14.

ALJ Flannigan next surveyed the record and determined that plaintiff retains the residual functional capacity ("RFC"), despite his impairments, to perform the following work-related functions:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift/carry/push/pull up to ten pounds occasionally and less than ten pounds frequently; stand for two hours out of an eight hour workday; walk for two hours out of an eight hour workday; sit for six hours out of an eight hour workday; occasionally stoop, twist the spine, kneel,

> crawl, crouch, and climb; occasionally reach, push, and pull using the non-dominant left upper extremity; can engage in only superficial contact with supervisors, co-workers, and the public defined as he can accept instructions from supervisors but would best function in a setting where work would be done independently without close supervisions and can work cooperatively but not collaboratively with co-workers and can greet the public but not engage in transactional encounters; and perform low stress tasks defined as tasks involving no negotiation, conflict resolution, responsibility for the safety of others, or fast paced production rate.

AT 14. After assessing plaintiff's RFC at step four, ALJ Flanagan concluded that plaintiff is unable to perform his past relevant work as a lawn service worker, laborer, landscaper, construction laborer, and attendant at a childrens' institution, based principally upon the exertional demands of those positions. AT 16. At step five, ALJ Flanagan found that if the medical vocational guidelines ("grids") were applied and plaintiff retained the RFC to perform a full range of sedentary work, Grid Rule 201.25 would direct a finding of no disability.[7] Because of the potential for

---

[7]    Sedentary work is defined by regulation as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary

erosion of the job base upon which the grids are predicated, based upon plaintiff's other limitations, however, ALJ Flanagan elicited testimony from a vocational expert and, based upon that testimony, concluded that plaintiff is able to perform the functions of an addresser; document preparer, microfilming; and cutter and paster, press clipping, all of which are sedentary positions with a Specific Vocational Preparation ("SVP") of 2. AT 17. Based upon that finding and the conclusion that jobs in those categories exist in sufficient numbers in the national economy, ALJ Flanagan concluded that plaintiff was not disabled at the relevant times.

B.    Proceedings in this Court

Plaintiff commenced this action on May 10, 2017. Dkt. No. 1. Following the filing of the administrative transcript of the evidence and proceedings before the agency on August 22, 2017, the *pro se* plaintiff submitted a brief on September 21, 2017, and the Commissioner responded with the filing of her brief on January 4, 2018. Dkt. Nos. 9, 11,

---

criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a). In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period. *See* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

18.[8]  The matter is now ripe for determination and has been referred to me

for the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3(d). *See* Fed. R.

Civ. P. 72(b); *see also* Dkt. No. 4.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d

983, 985 (2d Cir. 1987)). Where there is reason to doubt whether the

Commissioner applied the proper legal standards, the decision should not

be affirmed even though the ultimate conclusion reached is arguably

supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing

---

[8]      Under General Order No. 18 of this court, the matter is now considered as
having been submitted on cross-motions by the parties for judgment on the pleadings,
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

*Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be " 'more than a mere scintilla' " of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 308 U.S. at 229); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*, 402 U.S. at 401). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951; *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d

Cir. 1983).

B.    Disability Determination - The Five-Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the

16

second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable

17

of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.   Analysis

Due undoubtedly to his *pro se* status, plaintiff's brief is not particularly enlightening in setting forth the precise arguments raised in support of his challenge to the Commissioner's determination. I have construed his submission to raise issues principally concerning the supportability of ALJ Flanagan's RFC finding, the discounting of two treating medical source statements provided by plaintiff's treating physician, Dr. Ivan Antonovich and social worker Dean Anthony, and the ALJ's analysis of plaintiff's reported symptomology.

1.   Residual Functional Capacity

A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013). An RFC determination is informed by consideration of "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Tankisi*, 521 F. App'x at 33.

To properly ascertain a claimant's RFC, an ALJ must assess plaintiff's exertional capabilities, such as her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 416.945(b). Nonexertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered. *Id.* When rendering an RFC determination, the ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning her capabilities will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)); *accord, e.g., Bump v. Comm'r of Soc. Sec.*, No. 15-CV-1077, 2016 WL 6311872, at *3 (N.D.N.Y. Oct. 28, 2016) (Suddaby, C.J.). In addition, the ALJ's RFC determination must be supported by substantial evidence. *Ferraris*, 728 F.2d at 587; *accord, Bump*, 2016 WL 6311872, at *3.

In arriving at his RFC finding, ALJ Flanagan accorded great weight to the report of consultative expert Dr. Tonya Perkins-Mwantuali. Based upon her examination of the plaintiff, Dr. Perkins-Mwantuali diagnosed him as suffering from uncontrolled hypertension; morbid obesity; neck pain with radiculopathy to the left arm, with a noted decrease in strength and sensory deficits in the left arm; low back pain with sensory deficit in the left leg; sleep apnea; and significant decreased range of motion in the left

shoulder. AT 358. Dr. Perkins-Mwantuali offered the following medical source opinion concerning the plaintiff:

> The claimant has moderate limitation with bending, twisting, kneeling, crawling, squatting, and climbing. Mild to moderate limitation with walking and standing. He has moderate to marked limitation with lifting, pushing, pulling, reaching, and carrying with the use of the left arm.

AT 358. The opinion of a consultative examiner, such as Dr. Perkins-Mwantuali, can constitute substantial evidence to support an ALJ's RFC finding, particularly if it is supported by other record evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983).

Dr. Perkins-Mwantuali's medical source opinion is extremely similar to ALJ Flanagan's RFC finding, and therefore provides substantial evidence to support his RFC determination.[9] Prior to announcing his adoption of the majority of Dr. Perkins-Mwantuali's opinions, ALJ Flanagan discussed plaintiff's various treatment records and objective evidence that failed to support more restrictive limitations, including reports of examinations where plaintiff reported no acute distress, a normal gait, and no sensory or strength deficits, as well as medical imaging revealing only

---

[9]    ALJ Flanagan did reject Dr. Perkins-Mwantuali's finding regarding the claimant's strength and sensory deficits as not being reflected in plaintiff's treatment records. AT 15.

mild degenerative changes. AT 15.

The mental portions of ALJ's Flanagan's RFC finding, related to the ability to perform low contact, low stress work, is also supported by plaintiff's treatment records. There is no indication in the record of any hospitalization or significant treatment or medication for plaintiff's depression and anxiety. Indeed, plaintiff rarely demonstrated signs of depression or anxiety to his treatment providers and was not taking medication for those conditions. *See, e.g.*, AT 345, 371, 404-05, 415, 493, 496, 499, 502 and 505.

In sum, I find that the ALJ's RFC determination is supported by substantial evidence.

### 2.    Treating Source Opinions

As was previously discussed, in arriving at his determination ALJ Flanagan discounted a highly restrictive medical source statement provided by Dr. Ivan Antonovich, as well an opinion from LCSW Dean Anthony, a social worker. Ordinarily, the opinion of a treating physician regarding the nature and severity of an impairment is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Burgess v. Astrue*, 537 F.3d

117, 128 (2d Cir. 2008).[10] Such opinions are not controlling, however, if they are contrary to other substantial evidence in the record, including the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Where the record includes contradictory medical evidence, the resolution of such conflicts is properly entrusted to the Commissioner. *Burgess*, 537 F.3d at 128.

If the ALJ does not give controlling weight to a treating source's opinion, he must apply several factors to determine what degree of weight should be assigned to the opinion, including (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence supporting the treating provider's opinion; (4) the degree of consistency between the opinion and

---

[10]    The regulation governing treating physicians provides as follows:

> Generally, we give more weight to medical opinions from your treating sources . . . . If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply [various factors] in determining the weight to give the medical opinion.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence that has been brought to the attention of the ALJ. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 404.1527(c)(3)-(6); 20 C.F.R. §§ 416.927(c)(2)(i)-(ii), 416.927(c)(3)-(6); *Halloran*, 362 F.3d at 32. When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran*, 362 F.3d at 32. The failure to apply the appropriate legal standards for considering a treating physician's opinions constitutes a proper basis for reversal of an ALJ's determination, as is the ALJ's failure to provide reasons for rejection of his opinions. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *accord, Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

In his decision, ALJ Flanagan discussed the reasons for discounting the opinions set forth in Dr. Antonovich's medical source statement. AT 16. And, while the discussion concerning that rejection could have been more expansive, I find that it provides an adequate basis for judicial review. In his October 7, 2015 medical source statement, for example, Dr. Antonovich opined that plaintiff could sit for only about four hours in an eight hour day.[11]  AT 572. There is nothing in plaintiff's medical records,

---

[11]    In a later medical source statement, dated July 31, 2017, Dr. Antonovich

however, to demonstrate that he has deficits in his ability to sit. It was also noted in that statement that plaintiff is limited to standing and walking for about four hours in an eight hour work day.[12] *Id.* Plaintiff's medical records, in contrast, reflect only mild difficulties in walking, with no recommendation that he use assistive devices, and most references reflect a normal gait walking without difficulty, with a normal range of motion and muscle strength in plaintiff's legs. *See, e.g.*, 325, 350, 357-58, 386, 389-90, 406, 416, 425, 557-58. Dr. Antonovich's opinions regarding sitting, walking, and standing are also contradicted by the opinions of Dr. Perkins-Mwantuali, who did not assess any limitations in sitting, and found only mild to moderate limitations in walking and standing. AT 358.

Dr. Antonovich's opinions concerning being off-task and absent from work are also unsupported by the medical records, which do not demonstrate the existence of any ongoing attention deficits or difficulty in attending appointments. To the contrary, plaintiff appeared to be alert, oriented, and in no acute distress at many of his medical appointments, *e.g.*, AT 264, 271, 273, 356, 385, 389, 393, 405, 412, 415. Moreover,

---

reduced that opinion to only three hours of sitting in an eight hour work day. *See* Dkt. No. 11 at 3.

[12]    This finding is not inconsistent with plaintiff's ability to perform sedentary work. SSR 83-10; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a).

according to plaintiff, he is able to take care of his activities of daily living and personal needs, including personal grooming, shopping alone, managing money, and attending church and doctor's appointments regularly, all indicative of an ability to focus and concentrate. AT 213-16, 370, 507, 557. The ALJ therefore properly rejected Dr. Antonovich's limiting medical source statements.

The medical source statement of LCSW Anthony was also properly rejected by the ALJ. As a social worker, LCSW Anthony is not an acceptable medical source pursuant to the governing regulations in effect at the time of the decision. *See* 20 C.F.R. §§ 404.1513(a), (d), 404.1527(a)(2); 416.913(a), (d), 416.927(a)(2); *see also* SSR 06-03P; *Genier v. Astrue*, 298 F. App'x 105, 108-09 (2d Cir. 2008). Moreover, for the reasons set forth above, LCSW Anthony's opinions are inconsistent with plaintiff's presentations at medical appointments. I note, parenthetically, that portions of LCSW's Anthony's medical source statement opine on plaintiff's physical limitations, despite the lack of any evidence that he examined the plaintiff or was qualified to render opinions concerning plaintiff's physical condition.

In sum, I find that the ALJ did not improperly discount the opinions of plaintiff's treating sources without adequate explanation.

### 3.    Evaluation of Plaintiff's Symptomology

During the hearing, plaintiff claimed that his symptoms, including neck, back, and left arm pain; left hand numbness; weakness in extremities; boredom; and depression, limit his ability to perform work functions including the activities of daily living. AT 63; *see also* AT 212-20, 236-42. The ALJ engaged in an analysis of plaintiff's subjective complaints and concluded that they were not fully credible and were inconsistent with evidence in the record.

An ALJ must take into account a plaintiff's subjective claims in performing the five-step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, an ALJ retains the discretion to "weigh the credibility of the claimant's testimony in light of the other evidence in the record." *Id.*

A plaintiff's subjective complaints are entitled to great weight when they are consistent with and supported by objective clinical evidence demonstrating a medical impairment that "could reasonably be expected to produce the pain or other symptoms alleged."[13] 20 C.F.R. §§

---

[13]    Indeed, under the Social Security Act, a claimant must provide medical evidence

404.1529(a), 416.929(a); *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). The ALJ must consider other factors to assess a claimant's subjective symptomology, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of any symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other relevant factors, the ALJ may accept or reject claimant's subjective testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Martone*, 70 F. Supp. 2d at 151. If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Tome v. Schweiker*, 724 F.2d 711, 713 (2d Cir. 1984); *accord, Martone*, 70 F. Supp. 2d at 151. Where the ALJ's findings are supported by substantial evidence, the decision to

---

supporting a finding of disability. 42 U.S.C. § 423(d)(5)(A).

discount subjective testimony may not be disturbed on court review.

*Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984); *accord, Monette v. Colvin*, 654 F. App'x 516, 519 (2d Cir. 2016).

ALJ Flanagan's opinion reflects that he properly engaged in the prescribed two-step analysis for evaluating plaintiff's complaints. AT 14-16. After doing so, he found that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that the statements regarding the intensity, persistence,and limiting effects of the symptoms were not fully credible. AT 15. In arriving at that conclusion ALJ Flanagan properly considered plaintiff's activities of daily living. AT 14-16. As the ALJ noted, while plaintiff does not perform many chores around the house and needs assistance with some personal grooming, he is able to travel on his own, can manage his own money, attends church regularly, goes to doctor's appointments, does some cleaning, shops periodically, and speaks with friends on the phone daily. AT 13, 16; *see also* AT 52-55, 62, 213-17, 356-70, 507, 511, 557. It also appears that plaintiff has undergone only extremely conservative treatment for both his neck and back pain, a factor the ALJ properly considered in finding plaintiff's symptoms are not as limiting as claimed. *See, e.g., Martone v.*

*Apfel*, 70 F. Supp. 2d at 153.

In sum, I find that the ALJ engaged in a proper analysis of plaintiff's claims, and the rejection of those claims is supported by substantial evidence.

### 4.    Non-Severe Conditions

In his brief, plaintiff noted that he suffers from high blood pressure (hypertension), sleep apnea, sinus infections, and depression and anxiety, and that with those, conditions he would not be an asset to any employer. Dkt. No. 11.

When evaluating plaintiff's challenge, it must be born in mind that it is his burden to establish his limitations, through step four of the sequential analysis. *Poupore v. Astrue,* 566 F.3d 303, 305-06 (2d Cir. 2009). The governing regulations provide that

> [a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities.

20 C.F.R. § 404.1521(a). That section goes on to describe what is meant by the phrase "basic work activities", defining that term to include "the abilities and aptitudes necessary to do most jobs." *Id.* at § 404.1521(b). For purposes step two of the prescribed analysis, basic work activities include physical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching carrying and handling, as well as mental functions such as understanding carrying out and remembering simple instructions, using judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). It is plaintiff's burden at step two to demonstrate that his additional impairments are severe. *See Woodmancy v. Coleman*, 577 F. App'x 72, 74 (2d Cir. 2014).

While it is clear that plaintiff's blood pressure was elevated and his hypertension was at times uncontrolled, there is no indication of any resulting organ damage, nor that the condition would expected to interfere with plaintiff's ability to perform basic work functions. *See* AT 315, 356. Plaintiff's sleep apnea appears to have been controlled through the use of his CPAP machine when he was able to utilize it. AT 401-02, 438. Even with diminished use of the CPAP machine, moreover, there is no indication in the record that plaintiff's sleep apnea ever interfered with his ability to be alert and oriented. The record is similarly lacking with respect to any interference of plaintiff's sinus congestion with his ability to perform basic work activities.

It is true that the second step requirement is *de minimis*, and intended only to screen out the truly weakest of cases. *Dixon v. Shalala*,

54 F.3d 1019, 1030 (2d Cir. 1995); *Baneky v. Apfel*, 997 F. Supp. 543, 545-46 (S.D.N.Y. 1998). Nonetheless, the evidence in the case amply supports rejection of plaintiff's hypertension, sleep apnea, and sinus infection as conditions sufficient, in and of themselves, to satisfy step two of the inquiry.[14] ALJ Flanagan did find that plaintiff's depression and anxiety were severe at step two of the sequential analysis, and included several limitations in his RFC fashioned to accommodate the limitations associated with those conditions. With regard to plaintiff's hypertension, sleep apnea, and sinus infections, however, there is no indication in the record to suggest that those conditions caused significant functional limitations in plaintiff's ability to perform work activities. This argument thus provides no basis to overturn the Commissioner's determination.

### 5.    After-Acquired Evidence

With his brief, plaintiff has submitted a second medical source statement from Dr. Antonovich, dated July 31, 2017, nearly two years after the issuance of ALJ Flanagan's decision. Dkt. No. 11 at 3-5. In many respects the medical sources statement is similar to his earlier statement,

---

[14]    Even though rejected at step two as being sufficient in severity, any work-related limitations associated with the rejected condition must be taken into account in assessing a claimant's RFC. *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012); *see generally* 20 C.F.R. § 416.945(a)(2).

although it is slightly more restrictive. *Id.*

> The Social Security Act provides that a district court

>> may at any time order additional evidence to be
>> taken before the Commissioner of Social Security,
>> but only upon the showing that there is new
>> evidence which is material and that there is good
>> cause for the failure to incorporate such evidence
>> into the record in a prior proceeding[.]

42 U.S.C. § 405(b). In order to properly be considered, post-hearing

evidence must be new and material and must relate to the period on or

before the ALJ's decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).

Evidence is "new" if it is not merely cumulative of what is already in the

record, and is "material" if it is both 1) relevant to the claimant's condition

during the time period for which benefits have been denied—that is, the

period on or before the ALJ's decision, and 2) probative—in other words,

that there is a "reasonable probability that the new evidence would have

influenced the Commissioner to decide the claimant's application

differently." *Webb v. Apfel*, No. 98-CV-791, 2000 WL 1269733, at *14

(W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir.

1990)).

    In this instance, it is unclear whether Dr. Antonovich most recent

medical source statement relates to plaintiff's condition prior to the date of

ALJ's Flanagan's decision. Assuming that it does, however, it is neither

new nor material. As was previously noted, the proffered medical source statement is largely duplicative of an opinion provided by the same doctor prior to the hearing in this matter. Accordingly, even if it were to relate back to the relevant period, there does not appear to be any reasonable possibility that the evidence would have influenced the ALJ to decide plaintiff's case differently.

### 6.   Step Five Determination

At step five of the sequential disability test, the ALJ posed a hypothetical question to the vocational expert appearing at the hearing. That hypothetical tracked ALJ Flanagan's RFC finding. In response, the vocational expert identified three jobs that the plaintiff could perform, each existing in substantial numbers in the national in the national economy, notwithstanding his limitations. AT 63-73. The ALJ complied with his obligation under SSR 00-4P to confirm that the testimony was consistent with the Dictionary of Occupational Titles ("DOT"). The ALJ thus properly relied upon the opinion of the vocational expert to satisfy the Commissioner's burden of step five. *See Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 114 (2d Cir. 2010). Since the RFC determination upon which the hypothetical is predicated is supported by substantial evidence, the ALJ's step finding was proper based upon the vocational expert's

testimony. *Id.*

IV.    SUMMARY AND RECOMMENDATION

The Acting Commissioner's determination in this matter is supported by substantial evidence and resulted from the application of proper legal principles. Accordingly, it is hereby respectfully

RECOMMENDED that judgment on the pleadings be GRANTED to the defendant, the Acting Commissioner's determination be affirmed, and plaintiff's complaint (Dkt. No. 1) in this action be dismissed.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[15] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this

---

[15]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:      November 7, 2018
            Syracuse, NY